# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              CRIMINAL ACTION NO. 2:18-cr-00225-01

AURELIUS EDMONDS,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Defendant's Motion to Suppress and Exclude the Contents of the Fruits of Pole Camera Surveillance in this Case, Cell Site Surveillance, Cell Phone Searches, and State and Federal Title III Wiretaps* (Document 636), filed by Defendant Aurelius Edmonds. The Defendant seeks to suppress "the contents of any electronic surveillance, and any and all fruits of all pole camera surveillance in this case, all cell site surveillance, all cell phone searches, all pen register and trap and trace [PRTT], all latitude and longitude data (geolocation information), and all state and federal Title III wiretaps in this matter." (Mot. 636 at 1.) He further seeks to suppress the fruits of all searches on the residences at 1008 18th Street and 2126 Liberty Street and his cell phones, as well as the residences and mobile devices of any other co-defendant.

He argues that the Title III applications were insufficient on their face and were based on illegally acquired information, and that the PRTT geolocation and cell site searches were authorized under the same inadequate affidavits. He contends that some evidence in the case was gathered through state Title III wiretap applications, unsupported by affidavits, and that unlawfully

acquired evidence contributed to the basis of the federal wiretap applications. He further challenges the qualifications of the agents involved in reviewing and monitoring the intercepts.

He argues that much of the evidence in this case, including evidence used to support the Title III application, was derived from the warrantless use of pole cameras placed at the residences of Mr. Rhodes, Mr. McGuirk, Mr. Hughes, Mr. Hopkins, and Mr. Edmonds. (citing *U.S. v Moore-Bush*, 381 F.Supp.3d 139 (2019) (D. Ma.) (finding pole cameras require a warrant if being used as an investigative tool rather than general guard against crime). In addition, Mr. Edmonds contends that the wiretap was improper because it was not necessary, and normal surveillance and investigation techniques could have exposed the (alleged) crime. He argues that the wiretap collected information beyond the scope of the application. In addition, he contends that the wiretap applications for August 13, 2018 and September 10, 2018 failed to properly recite the previous court-ordered interceptions, and thus the evidence gathered should be suppressed. Finally, he contends that his warrantless arrest was without probable cause, and any evidence derived therefrom should be suppressed.

Mr. Edmonds requests that the Court hold a hearing, suppress the evidence described in the motion, and dismiss the charges against him.

The Court has also reviewed the *United States Response to Motion to Suppress and Exclude the Contents of the Fruits of Pole Camera Surveillance in This Case, Cell Site Surveillance, Cell Phone Searches, and State and Federal Title III Wiretaps* (Document 668), together with the attached exhibits and separately filed sealed exhibits. The United States urges the Court to disregard the Defendant's arguments regarding an alleged state court wiretap order, a warrantless search of Mr. Edmonds' residence on 18th Street in Parkersburg, and a purportedly warrantless

search of a residence on Liberty Street in Parkersburg. It contends that there was no state wiretap order and all wiretap evidence in this case was collected pursuant to federal court orders, that the 18th Street residence was not searched, and that the Liberty Street residence was searched pursuant to a valid warrant.

The United States further contends that each warrant was supported by probable cause and contained all required information, as to both wiretap applications and affidavits and warrants for searches of residences and electronic devices. In addition, the United States argues that the pen register trap and trace devices were authorized under the wiretap orders. It argues that Fourth Circuit precedent permits use of pole cameras without a warrant under the open-fields doctrine. It notes that the Defendant failed to set forth specific deficiencies in the wiretap affidavits. The United States contends that the wiretap applications adequately set forth evidence supporting the Court's finding of necessity, properly recited previous wiretap orders in the case, and that the interception remained within the authorized scope.

Finally, the United States argues that Mr. Edmonds' warrantless arrest was supported by probable cause, and notes that a criminal complaint and warrant were issued the day after his arrest. It again notes that the Defendant failed to identify specific deficiencies.

In addition, the Court has reviewed the *Defendant's Reply to the Government's Response to the Defendant's Motion to Suppress* (Document 704) and attached exhibits.[1] The Defendant contends that, contrary to the United States' representation, state electronic intercepts were used

---

[1] Reply briefs for pretrial motions, including motions to suppress and motions in limine, are not contemplated by the Local Rules of Civil Procedure for this district. In addition, the reply brief in this instance contains numerous arguments presented for the first time, depriving the United States of the opportunity to address those arguments in its response. The Court has considered the arguments contained in the reply brief in order to ensure a fair trial. However, the Defendant's counsel would be well-advised to familiarize herself with the applicable rules prior to trial.

to investigate Michael Rhodes in February 2018, and the information derived from those intercepts contributed to the federal wiretap application. He contends that the state electronic interception warrant was deficient, and tainted information from that warrant began the chain of events leading to each federal wiretap application, tainting those wiretaps. He further argues that "one or more people handling the interception were not qualified." (Reply 704 at 3.)

Mr. Edmonds further contends that the facts asserted in the August 13, 2018 wiretap application and affidavit were insufficient to support a probable cause finding because there was no direct evidence of criminal activity, the alleged drug activity discussed in intercepted calls was "only a theory," meeting and communications with others under investigation did not provide direct evidence of crimes, and surveillance of a vehicle does not confirm whether and when Mr. Edmonds was in the vehicle. (Reply 704 at 3-5.) He also presents additional argument regarding alternative investigative methods that he believes would have been successful without the need for a wiretap.

### A. Physical Searches and Arrest

The Defendant's bare, conclusory allegations that the searches of residences,[2] cell phones, and searches derivative of his arrest were not supported by probable cause do not contain sufficient detail to warrant a hearing. The motion does not permit either the United States or the Court to meaningfully address the motion or prepare for a hearing, as it does not identify any specific deficiency or area of potential factual dispute. To the extent the motion argues that the arrest was not supported by probable cause on the same grounds that it contends that the wiretaps were not supported by probable cause, the Court incorporates its findings and reasoning addressing the

---

2 Given the United States' representation that the 18th Street residence was not subject to a search, a motion to suppress evidence from such a search is moot.

wiretaps. Accordingly, the motion to suppress as to those searches will be denied.

### B. Pole Cameras

Law enforcement used pole cameras to surveil the area outside residences used by certain defendants and individuals investigated in this matter. Evidence from the warrantless pole cameras, in turn, was used to help establish probable cause for wiretap applications. Mr. Edmonds relies on a recent district court decision from Massachusetts to argue that the use of pole cameras requires a warrant. He does not cite precedent from within the Fourth Circuit.

The Court does not find the analysis in *United States v. Moore-Bush* to be persuasive. 381 F. Supp. 3d 139 (D. Mass. 2019), *as amended* (June 4, 2019). Long-standing Supreme Court precedent establishes "a two-part inquiry" into whether the Fourth Amendment provides protection against a challenged search: "first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citing *Smith v. Maryland,* 442 U.S. 735, 740 (1979)). In *Ciraolo*, the Supreme Court held that there was no reasonable expectation of privacy in the airspace above a residence, where officers used an airplane to discover marijuana plants in the fenced backyard of a home. *Id.* at 213-14. *Moore-Bush* relies on a Supreme Court decision holding that a warrant was required to obtain cell phone location records that tracked an individual's movements over an extended period. *Carpenter v. United States*, 138 S. Ct. 2206, 2219 (2018) (finding an invasion of "Carpenter's reasonable expectation of privacy in the whole of his physical movements"). However, the Supreme Court in *Carpenter* expressly stated that its opinion did not "call into question conventional surveillance techniques and tools, such as security cameras." *Id.* at 2220.

Mr. Edmonds does not contend that the pole cameras utilized in this case were able to record or observe any area not visible to the public. The only specific evidence gathered by pole camera footage that Mr. Edmonds identifies and challenges is footage of vehicles coming and going from the residences—something that can be observed by any neighbor, passer-by, or officer physically surveilling the area. *United States v. Adams*, No. 3:08-CR-77, 2011 WL 13161193, at *5 (N.D.W. Va. Feb. 23, 2011) (finding no warrant requirement for use of a pole camera that recorded the view of a public waiting room that could be seen from the parking lot). The Court declines to adopt the Defendant's proposed blanket rule that a warrant is required for use of a pole camera placed in a public location with a view available to the public. Because the Defendant has identified no facts suggesting that the pole camera in this case recorded areas or behavior over which he possessed a reasonable expectation of privacy, the motion to suppress the pole camera footage will be denied.

### C. Wiretap

Mr. Edmonds alleges generally that the wiretap applications were "based on illegally acquired information, lacked sufficient probable cause, and the communications were illegally intercepted." (Mot. 636 at 4.) The only specific "illegally acquired information" cited consists of state Title III interceptions and pole cameras. The wiretap applications and affidavits do not contain any reference to interceptions acquired through state wiretaps, and the United States indicates that there were no such wiretaps.[3] The wiretap applications at issue were approved

---

3 The Defendant attached an "Order Authorizing Electronic Interception pursuant to West Virginia Code § 62-1-F-1 et. seq." to his reply brief. The "electronic interception" described in that code section relates to wires worn by officers and informants, rather than the type of interception of electronic communications contemplated by federal Title III wiretaps. The federal Title III application and affidavit references communications recorded by a confidential informant that may have been authorized by this order.

without relying on any state Title III interceptions, and so the Court finds no merit to the motion to suppress. Likewise, the Court has found that no warrant was required for the use of pole cameras, and evidence garnered from pole camera footage and included in the wiretap applications was therefore not illegally obtained. Mr. Edmonds relies in part on the same arguments as co-Defendant Terrence McGuirk in challenging the probable cause of the wiretap applications. The Court has issued separate orders denying Mr. McGuirk's motions and incorporates those orders by reference herein.

In his reply brief, he contends that the evidence relied upon to connect him to the crimes at issue and to support the issuance of the order authorizing interception of his communications was insufficient. The August 13, 2018 application and affidavit detail evidence that Mr. Edmonds was involved in supplying substantial quantities of methamphetamine to other alleged conspirators. The application and affidavit recount a recorded conversation in which Mr. Edmonds discusses his travel plans and the progress of a drug transaction, including discussion of whether he should stay to get the other half of the drugs they intended to purchase, or accept half and get half of Mr. McGuirk's money back. In another recorded call, Mr. McGuirk requests additional drugs from Mr. Edmonds and they discuss pricing. In a call two days later, Mr. Edmonds tells Mr. McGuirk that he underpaid by $990, and Mr. McGuirk promises to get the money to him shortly. Context from the surrounding investigation, including other calls and cooperating witness statements, provides clarity where Mr. McGuirk and Mr. Edmonds use coded or vague language rather than explicitly identifying the drugs and quantities involved. In addition, officers observed Mr. Edmonds' vehicle leaving Mr. McGuirk's residence on July 31, 2018. Given the other evidence, including wire transfers, recorded calls, and statements from cooperating

witnesses, of a conspiracy to purchase large quantities of methamphetamine for distribution in the Parkersburg area, the phone calls involving Mr. Edmonds are sufficient to establish probable cause to approve the Title III application as to the telephone associated with him.

The September 10, 2018 application and affidavit recount calls from Mr. Edmonds' phone (Subject Telephone 9) that had been intercepted pursuant to the August wiretap, including discussions of large drug transactions, pricing, payment, and transportation of substantial drug quantities. In addition, communications between other wiretapped phones and additional phones used by Mr. Edmonds both establish that Mr. Edmonds was using those phones and provide additional evidence of his involvement in drug transactions, including transportation of substantial drug quantities into this region. Those calls, together with the other evidence providing additional context for the alleged offenses and Mr. Edmonds' role, are sufficient to establish probable cause.

Mr. Edmonds also challenges the assertions contained in the wiretap applications as to necessity. 18 U.S.C. § 2518 governs the interceptions of wire, oral, and electronic communications. That provision requires that wiretaps be authorized in advance by a judge and requires the presentation of specified information.

> In order to issue a wiretap, a judge must determine, on the basis of the application for the wiretap, that probable cause exists to believe that (1) an individual is committing, has committed, or is about to commit an offense enumerated in 18 U.S.C. § 2516; (2) particular communications concerning that offense will be obtained by the wiretap; and (3) the target facilities will be used in connection with the offense. The trial judge must also determine (4) the necessity for the wiretap—that is, normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or appear to be too dangerous.

*United States v. Sellers*, 512 F. App'x 319, 328 (4th Cir. 2013) (unpublished) (internal citations omitted).

"While the government cannot discharge its burden [to show the necessity of a wiretap] with bare conclusory statements that normal techniques would be unproductive or mere boilerplate recitation of the difficulties of gathering usable evidence, it is not required to show that other methods have been wholly unsuccessful, or that it has exhausted *all* possible alternatives to wiretapping." *United States v. Smith*, 31 F.3d 1294, 1297–98 (4th Cir. 1994) (internal quotation marks, punctuation, and citations omitted). "Although wiretaps are disfavored tools of law enforcement, the Government need only present specific factual information sufficient to establish that it has encountered difficulties in penetrating the criminal enterprise or in gathering evidence such that wiretapping becomes reasonable." *United States v. Wilson*, 484 F.3d 267, 281 (4th Cir. 2007) (internal quotation marks, punctuation, and citations omitted).

The wiretap applications in this case detailed the traditional investigation methods used, including pole cameras, surveillance, controlled transactions, and use of confidential informants. The affidavits indicate that confidential informants and witnesses did not have access to all members of the conspiracy, particularly individuals more closely connected with suppliers, and could not safely seek greater access or ask questions that would provide more information about the supply chain. Drug transactions did not take place in public locations subject to physical surveillance, and meeting locations changed regularly. Some members of the conspiracy regularly switched vehicles and even residences, reducing investigators' ability to effectively use physical surveillance, GPS tracking devices, or trash pulls. Arrests of lower-level individuals or customers triggered some alleged conspirators to switch cell phones, and those arrested were generally uncooperative with investigators. Telephone calls monitored through the use of confidential informants or previously approved wiretaps revealed that transactions were regularly

9

arranged in phone calls or text messages.

The Court has carefully considered the evidence of necessity presented in each application, both at the time of the applications and in consideration of this motion. The Court finds that the applications adequately set forth facts specific to the case that establish the wiretaps were necessary to accomplish the goals of the investigation, including identifying individuals involved in importing drugs to this region and intercepting those drugs. The Defendant's motion to suppress does not set forth facts that either call into question the assertions contained in the wiretap affidavits or that negate the necessity finding. Therefore, the motion to suppress the wiretaps based on the asserted lack of necessity will be denied.

The Defendant further argues that the 8-13-2018 and 9-10-2018 wiretap applications and affidavits "fail to properly recite the previous court-ordered interceptions in the case." (Mot. 636 at 12.) A review of those applications and affidavits reveals that they contain a recitation of the previous court-ordered interceptions. Similarly, contrary to the Defendant's assertions, each of the wiretap applications and affidavits properly identify the law enforcement officer and government official responsible for the applications. The assertion that "one or more people handling the interception" were not qualified relies on speculation without additional specific factual allegations regarding either the process or the individuals involved. Thus, the Defendant's motion to suppress on that basis should also be denied.

### D. PRTT and Geolocation Data

The wiretap applications include requests for authorization to collect pen register and trap and trace data, as well as geolocation data. The Defendant does not identify specific deficiencies as to the probable cause showing contained in those requests, which were approved by the Court.

To the extent the Defendant(s) have not been provided with the court authorizations for collection of this material, the United States has indicated it will promptly provide those documents. Accordingly, the motion to suppress will be denied as to the PRTT and cell phone location data.[4]

## CONCLUSION

The Court further finds that the Defendant has not made a preliminary showing that information contained in any warrant or wiretap application was deliberately false or offered with reckless disregard for the truth, and so no hearing is required. *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978).

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Suppress and Exclude the Contents of the Fruits of Pole Camera Surveillance in this Case, Cell Site Surveillance, Cell Phone Searches, and State and Federal Title III Wiretaps* (Document 636) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: February 5, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

4 Should the Defendant identify *specific* evidence that he believes, after requesting the relevant court authorizations from the United States, was collected without authorization, he may file a supplemental motion as to that specific evidence.